**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Gina Johnson, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Clever Real Estate, Inc., and HomeLight, Inc.,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**Nature of this Action**

1. Gina Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Clever Real Estate, Inc. ("Clever") and HomeLight, Inc. ("HomeLight") (together, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or telemarketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing text message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**Parties**

4. Plaintiff is a natural person who at all relevant times resided in Anza, California.

5. Clever is a Delaware corporation that runs who runs a real estate brokerage and associated marketing and lead generation business headquartered in St. Louis, Missouri.

6. Clever is a licensed real estate brokerage in the State of Missouri, with license # 2017042277.

7. HomeLight is a Delaware corporation who runs a real estate marketing and lead generation business headquartered in Scottsdale, Arizona.

8. HomeLight is also a licensed real estate brokerage in the State of Missouri, with license # 2017011612.

9. HomeLight has been registered as a foreign corporation with the State of Missouri Secretary of State since 2012, has regularly made filings to satisfy filing requirements for registration with the State of Missouri to do business there, and currently maintains an active registration to do business in the State of Missouri.

10. In fact, in January of 2024, the State of Missouri put HomeLight on notice that it failed to pay certain taxes to the Missouri Department of Revenue, threatening to revoke HomeLight's authority to do business in Missouri, and, upon information and belief, HomeLight complied with those directives to avoid losing the ability to do business in Missouri.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 28 U.S.C. § 1331.

12. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as Clever is based in this district, and a significant portion of the events giving rise to this action occurred in this district.

13. In particular, Defendants directed their text messages to Plaintiff's telephone from

this district.

14. Defendants' communications also identify a fictitious entity known as "Liberty Home Report" that purports to be responsible for the messages at-issue, which they represent is located in Missouri.

15. Additionally, Defendants' communications identify the business office associated with their communications at "6358 Delmar Blvd suite 300. St. Louis MO."

16. Therefore, Defendants each purposefully availed themselves of jurisdiction in this District, and represented themselves to reside in this District in their communications with Plaintiff.

17. Moreover, HomeLight purports to have introduced almost 45,000 "buyers and sellers to top local Missouri real estate agents."[1]

18. Additionally, HomeLight's actions in securing Missouri-specific licensure as a brokerage in that state, couple with its decade-plus history of regularly making required business filings with the State of Missouri Secretary of State, separately show that HomeLight purposefully availed itself of jurisdiction in this District.

**Factual Allegations**

19. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(951) 760-XXXX.

20. Plaintiff uses her cellular telephone as her personal residential telephone number.

21. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039

---

[1] https://www.homelight.com/states/mo (last visited November 20, 2025).

(2003).

22. Plaintiff registered her cellular telephone number with the DNC Registry on July 30, 2024, and has maintained that registration through the present date.

23. Beginning in November 2025 and continuing through the present, Plaintiff began receiving text messages on her cellular telephone from (772) 236-9486, touting interest in Plaintiff's real estate, along with "offer[s] for your home."

24. For example, Plaintiff received at least three text messages from (772) 236-9486:




25. Plaintiff did not recognize the sender of these text messages.

26. Plaintiff is not, and was not, interested in "offers" regarding her home, or retaining

any real estate professionals for a real estate transaction.

27. Plaintiff is not, and was not, interested in Defendants' services or marketing.

28. Each of the URLs in Defendants' text messages directed to a website purporting to be run by "Liberty Home Report," which purports to be a real estate appraisal service responsible for "20,000+ Appraisals completed every month."[2]

29. The website further discloses that "Liberty Home Report is a Delaware corporation with a business office located at 6358 Delmar Blvd suite 300. St. Louis MO 63130 and a licensed real estate brokerage in MO, License # 2017042277."[3]

30. However, there is no "Liberty Home Report" registered to do business in Delaware (or Missouri, or California), and upon information and good faith belief, is instead a fictitious entity and front for the telemarketing operations of Defendants.

31. The address and brokerage license number disclosed therein is associated with Clever.

32. Moreover, upon engaging with the website and proceeding to "view offers," the URL and website suddenly changes to "www.homelight.com," and then seeks for the user to input information about their home, in order to then refer the user to a network of affiliated real estate agents:

---

2 https://try.libertyhomereport.com/ (last visited November 20, 2025).

3 https://try.libertyhomereport.com/terms-of-use?affid=276&utm_source=aff-cc&utm_medium=affiliate&utm_campaign=R-CPL|winning_offer&utm_term=CCTX00001060&utm_content=102e37cbe56f0ac493b8868a9228a7&fname=Gina&lname=Johnson&street=59580%20Everett%20Road&city=Anza&state=CA&zip=92539-0685&interested_in_agent=true (last visited November 20, 2025).

**Create your account**

Our service is 100% free. No strings attached.

Full Name

Email Address

Phone

Enter your phone number

Continue

By clicking "Continue", you agree to receive recurring text messages and/or calls from HomeLight (e.g., account news/alerts and promotional offers), its business partners and affiliates, eligible agents, and investors at the number provided above, even if it is on any Do-Not-Call list. Std. msg. rates apply. To unsubscribe from texts, reply STOP to any text message you receive. To unsubscribe from calls, call 866-627-3398. Texts and calls may be made using an automatic telephone dialing system. Consent is not required as a condition of purchase.

By clicking "Continue", you acknowledge you have read HomeLight's Privacy Policy and agree to the Terms of Service.

33. The Terms of Service referenced therein detail the nature of HomeLight's offerings:

Matchmaking is the core of what we do for real estate. When the time is right, we make a professional introduction between you and one of our Real Estate partners. The service that we provide to both buyers and sellers of real estate and real estate professionals is governed by a few terms that are outlined below.

Because we are an online service, we don't ask you to deal with and physically sign a lengthy contract. The terms of our contract with you are set forth below in plain language. If you don't agree with the terms, then we ask you please to leave this Web site and not use our services. If you do use this Web site, then that action will serve as your agreement to be bound by our terms of service ("Terms of Service" or "Agreement").

HomeLight, Inc. ("HomeLight") is operated in compliance with all state and federal housing laws.

**Terms for Broker and Agents**

Real estate professionals who are involved with and use our Web site must agree with the following terms:

1. You grant HomeLight.com permission to display on our Web site and elsewhere information that we have gathered or you have supplied related to any of the real estate transactions that you have handled as a real estate professional. This information helps your potential clients better understand your specialties.
2. Maintaining a profile on HomeLight is completely free. However, if you choose to accept Referrals from HomeLight, and if you subsequently handle a real estate transaction for this Referral, then you agree to pay us a Referral Fee that will be a percentage of the gross commission you earn. This is how we earn money and is what allows us to continue to provide our services to you. Your acceptance of any Referral from HomeLight constitutes your express and ongoing assent to the terms of the Referral Agreement, as may be amended from time to time.

. . .

**Terms for Buyers and Sellers**
All non-real estate professionals (including prospective Buyers and Sellers and their representatives) who are involved with and use our Web site must agree with the following terms:
1. When the time is right, we may make a professional introduction between you and one of our partners, including a real estate agent or one of our real estate investment partners. Of course, this introduction involves sharing the contact information of each party with the other. When you submit information to HomeLight.com for a request, you authorize us to use and provide this information to make an introduction. By providing this information to us, you consent to being contacted by us and by our partners via phone, email, mail or other reasonable means.
2. For us to help you, we need you to provide information that is accurate and complete, especially your contact information so that our Real Estate partners can contact you quickly and efficiently. We reserve the right to suspend or terminate access to anyone who supplies information that is inaccurate or misleading.
3. YOU UNDERSTAND THAT WHILE HOMELIGHT MAY REFER REAL ESTATE PROFESSIONALS, ANY REAL ESTATE TRANSACTIONS WILL BE CONDUCTED BY LOCAL REAL ESTATE PROFESSIONALS OR INVESTORS THAT HAVE BEEN REFERRED TO YOU AND ARE NOT AFFILIATED WITH HOMELIGHT, INC. WE ARE NOT PARTY TO NOR AWARE OF ANY TERMS OF ANY TRANSACTION NEGOTIATED BY THESE REAL ESTATE PROFESSIONALS. HOMELIGHT DOES NOT ENDORSE, RECOMMEND, OR OTHERWISE KNOW THE TERMS OF ANY AGREEMENT BETWEEN YOU AND A REAL ESTATE PROFESSIONAL.
4. YOU UNDERSTAND THAT WHILE WE MAY MAKE AN INTRODUCTION TO A THIRD PARTY REAL ESTATE PROFESSIONAL, WITH WHOM YOU MAY OR MAY NOT CHOOSE TO PURSUE A POTENTIAL BUSINESS RELATIONSHIP, HOMELIGHT IS NOT YOUR AGENT, DOES NOT REPRESENT YOU, AND WILL NOT BE PERFORMING ANY REAL ESTATE BROKERAGE SERVICES ON YOUR BEHALF

> BEYOND INTRODUCING YOU TO QUALIFIED REAL ESTATE PROFESSIONALS.
> 5. YOU UNDERSTAND THAT FOR OUR INTRODUCTION SERVICES WE MAY RECEIVE payment (a Referral Fee) that may be a percentage of the commission received by the professionals involved in the real estate transaction. There is no charge to you. Any payment is due based on a separate agreement between us and the professional involved. Your use of our services constitutes your acknowledgment of, and agreement to, this compensation arrangement.[4]

34. In other words, HomeLight partners with real estate firms, such as Clever, to solicit interested consumer leads for real estate representation as either buyers or sellers.

35. When called, the phone number referenced in that page, (866) 627-3398, presents an IVR that states as follows: "Thank you for calling HomeLight. If you are looking to rent a home, please press 1. If you are looking to buy a home, please press 2. If you are looking to sell a home, please press 3. . . ."

36. Additionally, the URLs in Defendants' text messages provide a separate phone number to "Get Your Offer Faster" by calling (903) 300-5827.

37. That same phone number is used on other, materially identical websites, including https://www.simplesale.com/.

38. That website includes the following disclosure: "Simple Sale is a property of Simple Sale, Inc. Simple Sale, Inc. is a licensed real estate broker in the State of California, DRE license # 01900940."

39. However, like Liberty Home Report, "Simple Sale, Inc." *does not appear to exist.*

40. Rather, the California license # 01900940 is registered to HomeLight, and the website further discloses an address of "100 California Street, 8th floor. San Francisco, CA," which, based upon the State of Missouri Secretary of State's records, was HomeLight's prior

---

[4] https://www.homelight.com/terms (last visited November 20, 2025) (emphasis in original).

headquarters before it moved its headquarters to Arizona, but is still utilized as a corporate office for HomeLight.

41. Therefore, upon information and belief, HomeLight is a real estate lead generator—cold-calling consumers for the purpose of identifying consumers interested in real estate representation—and thereafter funneling them to their real estate network, including Clever, for subsequent real estate representation.

42. In exchange for that referral, HomeLight receives and collects referral fees from its realtor clients as a percentage of the realtor's ultimate commission fee.

43. Clever itself appears to both offer real estate representation and lead generation for other real estate agencies, noting that "[w]hen you sell a home with Clever, you'll be connected with realtors from our nationwide network of more than 18,000 top-producing agents from all the major brands and local brokerages. Thanks to the size of our agent network, we can negotiate a lower commission rate on your behalf, so you can sell your home with a full-service listing agent for just 1.5%."[5]

44. In other words, Clever charges consumers 1.5% of the value of a purchased or sold home in exchange for representing the consumer in that transaction.

45. Thus, Clever and HomeLight each receive compensation from payments made by consumers who engage them—or their affiliates—for real estate services.

46. Therefore, Defendants appear to be acting as a joint enterprise to engage in cold-call telemarketing to consumers for the purposes of identifying, and then selling, leads for real estate representation to real estate agents or brokerages, and with the consumer ultimately paying commission to the real estate agent associated with that representation.

---

[5] https://listwithclever.com/about/ (last visited November 20, 2025).

47. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id*. at 3793-94.

48. In other words, the FCC has expressly declared that conduct materially similar to Defendants' conduct qualifies as a regulated telephone solicitation which accordingly means that Defendants must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

49. As a result, Defendants' conduct—contacting known or suspected homeowners by text message to offer (or arrange for another to offer) representation to the homeowner as a buyer's or seller's agent, in exchange for commission—fits squarely within the TCPA's definition of telemarketing or solicitation, as reinforced by the FCC.

50. Online complaints reinforce the widespread nature of Defendants' cold-call telemarketing campaign, with consumers complaining of HomeLight on the BBB website as follows: [6]

- I have received calls for a "******** ********" about a home I do not even own.

[6] https://www.bbb.org/us/az/scottsdale/profile/real-estate/homelight-inc-1126-1000064561/complaints (last visited November 20, 2025).

I have received a slew of these calls and am being harassed. I am not the individual in question, nor did I ask for my phone number to be shared. Please cease and desist all calls to my phone.

- i have never signed up for this website, and now im getting calls every day from brokers and emails. I have requested my cell, email and address to be removed from their website and to remove the address listed. i cannot reach anyone. It needs to be removed including the address, cell, information, i never signed up for this. REMOVE ME FROM THIS WEBSITE including personal information, address, cell, i never signed up for this contact.
- I have been receiving over 30 texts, emails and phone calls from agents of Homelight for over two weeks. I never signed up with this agency and do not want to sell my home. I have emailed and texted Homelight asking them to stop this harassment, but the calls have not stopped. I was in Europe for part of this time which meant that the texts and phone calls were coming in the middle of the night as well due to the time change. Most of the contacts are addressed to "Dick" and no one has ever called me ****, so it is clear that this was not started by me. Is there no way to determine how this started? Are there no quality controls? Please stop the harassment now.
- Beginning at 5:17pm on Friday, July 7, 2023, I began receiving phone calls, emails, and text messages from real estate agents from HomeLight looking to help me sell my home. I never signed up for HomeLights services. I dont even own the house theyre telling me Im trying to sell.

51. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

52. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

53. Defendants sent the text messages at issue for non-emergency purposes.

54. Upon information and belief, Defendants sent the text messages at issue voluntarily.

55. The purpose of the text messages at issue was to advertise and to market Defendants' business or services, or the business or services of their real estate agent/broker clients, partners, or affiliates.

56. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance, and because Defendants' text messages frustrated the very purpose for her signing up for the DNC Registry, as

she signed up in a specific effort to stop the various text messages she was receiving from senders like (or including) Defendants.

57. Upon information and belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

58. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Clever Real Estate, Inc. or HomeLight, Inc. sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting Clever Real Estate, Inc.'s, HomeLight, Inc.'s, or their business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Clever Real Estate, Inc. or HomeLight, Inc. sent, or caused to be sent, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom Clever Real Estate, Inc. or HomeLight, Inc. sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting Clever Real Estate, Inc.'s, HomeLight, Inc.'s, or their business partners', goods or services, (2) where the subject calls or text messages did not state the name of the individual caller, the name of Clever Real Estate, Inc. or HomeLight, Inc., and a telephone number or address at which Clever Real Estate, Inc. or HomeLight, Inc. may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

59. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

60. Upon information and belief, the members of the Classes are so numerous that

joinder of all of them is impracticable.

61. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

62. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

63. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

64. Plaintiff's claims are typical of the claims of the members of the Classes.

65. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation telephone calls and text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone numbers with the DNC Registry.

66. As they did for all members of the Sender Identification Class, Defendants delivered solicitation telephone calls and text messages to Plaintiff's telephone number where the subject calls and text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

67. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

68. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

69. Plaintiff suffered the same injuries as the members of the Classes.

70. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

71. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

72. Plaintiff will vigorously pursue the claims of the members of the Classes.

73. Plaintiff has retained counsel experienced and competent in class action litigation.

74. Plaintiff's counsel will vigorously pursue this matter.

75. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

76. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

77. Issues of law and fact common to all members of the Classes include:

a. For the Federal Do-Not-Call Registry Class, Defendants' practice of placing telephone calls or sending text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

b. For the Sender Identification Class, Defendants' practice of placing telephone calls or sending text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

c. Defendants' violations of the TCPA;

d. Whether Defendants are jointly or vicariously liable for the conduct alleged herein; and

e. The availability of statutory penalties.

78. A class action is superior to all other available methods for the fair and efficient

adjudication of this matter.

79. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

80. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

81. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

82. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

83. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

84. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

85. There will be no extraordinary difficulty in the management of this action as a class action.

86. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

87. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-86.

88. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

89. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

90. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

91. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

92. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

93. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-86.

94. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

95. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

96. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

97. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the

person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

98. Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation telephone calls or text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: November 25, 2025.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk
E.D. Mo. Bar No. 24117430(TX)
Bryan A. Giribaldo
E.D. Mo. Bar No. 24124547(TX)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff and the proposed classes*